UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON BANKS, SR. AND<br>LISA BANKS | CIVIL ACTION |
| VERSUS | NO. 08-1091 |
| NEW ORLEANS CITY, ET AL | SECTION B(3) |

## ORDER AND REASONS

Before the Court are Defendants United States and ECC's Motions for Partial Summary Judgment on Damages (Rec. Docs. 57, 60). Defendants request that Plaintiffs' recovery be limited to the cost to rebuild Plaintiffs' property as it stood prior to demolition, minus depreciation, and assert that Plaintiffs are not entitled to recover mental anguish damages. The motion is opposed. (Rec. Doc. 68). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendants' Motions for Partial Summary Judgment are **DENIED.**

*BACKGROUND*

Plaintiffs owned property located at 2311 Tricou Street in the Ninth Ward of New Orleans, Louisiana. As a result of Hurricane Katrina, a home ("floater home") from a neighboring lot floated or was blown into a wood frame garage on Plaintiffs' home. Plaintiff asserts that the floater home collapsed the garage but did not damage Plaintiff's single story brick home. The brick home did, however, suffer flood damage as a result of Katrina. While in the

1

process of cleaning and gutting their home, Plaintiffs signed up for a debris removal program sponsored by the City of New Orleans ("the City"). Inspections conducted by the City indicated that Plaintiff's home sustained no major damage. The City contracted with Irving Trucking to remove the floater home and garage; this work was completed in March 2007.

In June and July 2007 letters stating that the property located at 2311 Tricou St. had been condemned and would be demolished after thirty (30) working days of the date of each letter were mailed to Plaintiff Mr. Banks at 2311 Tricou St. Defendants assert that notice was also posted in the Times Picayune and on the City's website. Plaintiffs' home was demolished on or around July 30, 2007 by ECC Operating Services, Inc. ("ECC"), who was contracted for the task by the Army Corps. Plaintiffs assert that such demolition was wrongful and was done without their knowledge or approval. Plaintiffs filed administrative claims with the Army Corps ("the Corps") in October 2007 and filed suit in state court in January 2008 against EEC and the City of New Orleans for wrongful demolition of their property. Defendants removed the suit to federal court on February 21, 2008. The Corps failed to process and/or evaluate Plaintiffs' administrative claims within six months after filing; subsequently, Plaintiffs filed their First Supplemental and Amended Complaint adding Defendant United States of America in July 2008. Defendants United States and ECC filed this Motion for Partial Summary Judgment seeking to limit

Plaintiffs' recovery to the cost to rebuild Plaintiffs' property as it stood prior to demolition, minus depreciation, and to bar Plaintiffs' recovery for alleged mental anguish damages.

Defendants assert that the objective of Louisiana law on damages is to restore the owner to the position he was in immediately prior to the tortious conduct and that damages should be limited to fair market value under nondistress circumstances. Additionally, because it is impossible to reconstruct Plaintiffs' home to its gutted but non-restored state, Defendants argue that any damage award should be offset by depreciation in order to prevent Plaintiffs' receipt of a windfall.

Next Defendants argue that Plaintiffs are not entitled to mental anguish damages because they can establish none of the essential elements required to prove mental anguish as a result of property damage. In particular Defendants assert that Louisiana law looks to see if the tortfeasor intended to inflict an injurious consequence and argue that Plaintiffs cannot establish any such intent on the part of Defendants. Defendants cite Plaintiffs' own pleadings and memoranda asserting that the alleged tortious actions were the result of negligence and mistake.

Plaintiffs argue that they are entitled to recover full restoration costs without a deduction for depreciation. Plaintiffs assert that Louisiana law allows the full replacement value for homes in light of the personal attachment homeowners have to long-term residences, even if such is disproportionate to the underlying

3

value of the home. Plaintiffs assert such a personal attachment to their home and present supporting facts such as Plaintiff/Owner Jason Banks' status as a third generation resident of Ninth Ward and that the home in question was built by his grandparents. Plaintiffs also point out that they raised their own family in the home and moved to quickly gut and maintain the property following their return to New Orleans after Katrina. Plaintiffs assert that the specific damage decisions and calculations requested by Defendants are premature for summary judgment and argue that the weight of the evidence should be determined by the jury.

Regarding emotional damages, Plaintiffs argue that they qualify for mental anguish damages because Defendants' demolition of their home was an intentional act.

## *DISCUSSION*

**A. Legal Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving

4

party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

The United States is liable only to the extent it waives sovereign immunity. *Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991). Under the Federal Tort Claims Act ("FTCA"), suits against the United States are authorized "for injury or loss of property . . . caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672*. Johnson v. Sawyer*, 4 F.3d 369 (5th Cir. 1993) ("To recover under the FTCA, [plaintiff] must have been able to succeed against the [federal] government in a *state* law tort cause of action." (emphasis in original)). The FTCA also provides that the United States will be liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. When considering the federal government's consent

5

to be sued under a state's liability scheme, the "relevant question [is] whether the federal defendants [are] in 'like circumstances'" as the private individuals subject to the state statute. *Owen*, 935 F.2d at 737.

It is a well-settled general principle that the tort liability of the United States is, in actions under the Federal Tort Claims Act, governed by the law of the state where the tortious conduct took place. *See e.g., Artez v. United States*, 604 F.2d 417, 429 (5th Cir. 1979). Hence Louisiana tort law applies.

**B.   Damages for Destruction of Property**

Louisiana tort law provides, as a general rule, that damages in a tort suit are to place the injured party in "as good a position as before his property was damaged, but not a superior position." *Underwriters at Lloyd's London v. Osca, Inc.*, 2006 WL 941794, *11 (5th Cir. 2006)(recognizing the inconsistent rulings in Louisiana law regarding depreciation and *citing Reisz v. Kansas City S.R.R. Co.*, 935, 88 So. 120, 122 (La. 1921), which deducted depreciation for damages to a house, and compared it to *Roman Catholic Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So.2d 874, 876 (La. 1993), which allowed replacement costs for low income housing); *compare to Holzenthal v. Sewerage & Water Bd. of New Orleans*, 950 So.2d 55 (La. App. 4 Cir. 2007)(confirming award for full repair cost for plaintiffs' damaged homes). The measure of damages is the cost of restoring the property to its former condition. *Roman Catholic,* 618 So.2d at 876. In assessing

6

damage to property, generally courts have considered the cost of restoration as the proper measure of damage where the thing damaged can be adequately repaired. *Id.* However, courts will use diminution in value when the cost of restoring the land to its original condition is "disproportionate" to the diminution in value –"unless there is a reason personal to the owner for restoring the original condition." *Id.* *See also BellSouth Telecomms., Inc. v. Citizens Utilities. Co.*, 962 F.Supp. 79, 81 (E.D. La. 1996)(stating that depreciation should be considered when a damage award would place the plaintiff in a better position than before the accident).
 In the latter case, the damages will ordinarily include the amount necessary for repairs, even though this amount might be greater than the total value of the property. *Roman Catholic,* 618 So.2d at 878. Awards in excess of market value have been sustained for such "personal to owner" reasons as a home inhabited by a couple for thirty years, special appearance of entertainment equipment, and intrinsic value of research records*. Id.* (citing numerous cases involving damage to property "personal to owner"). However, every award for property damage must be crafted according to the facts surrounding each case. *BellSouth Telecomms., Inc. v. Citizens Utils. Co.*, 962 F.Supp. 79, 81 (E.D. La. 1996).

Plaintiffs have stated that they are only seeking the costs to restore the home to its pre-demolition gutted condition and has presented a contractor's estimate for such. Plaintiffs intend to use their Road Home grant, which was based on the costs of

rebuilding a gutted structure, to complete repairs to the house. Defendants attempt to analogize the present case to *BellSouth*. That case, however, as recognized by the Fifth Circuit, consisted of replacing telephone cables that had a life expectancy of four to five years and had been cut after two years. *Boston Old Colony Ins. Co. v. Tiner Assoc. Inc.*, 288 F.3d 222, 231-32. (5th Cir. 2002). The cables were replaced with new equipment. This constituted a substantial windfall because the plaintiff would have had to replace the cables in another two years. Hence the Court deducted the award by depreciation. Such a depreciation deduction is unnecessary for items with significantly longer life spans. *See id.* (finding that depreciation deduction was unnecessary in case involving the collapse of a transmission tower which had a life span of approximately fifty to seventy-five years).

The structure at issue in the present case is a house whose life span is significantly more analogous to the transmission tower than to a cable wire. Defendants contend that immediately prior to demolition Plaintiffs were about to spend significant amounts of money on their home and allege that it may even have needed "total replacement." Plaintiffs, however, assert that the structure of the house was sound, that they had gutted the house, and were only awaiting Road Home monies to continue the necessary repairs. Both parties present estimates and damage reports and market value analyses. The restoration estimates differ by about $35,000. The weight of this evidence and determination of repair costs is to be

determined by the jury, not the Court on summary judgment. However, as recognized in *Holzenthal*, homeowners, who have a personal attachment to their long-term residences, are often entitled to the full repair cost, even if that cost is disproportionate to the underlying value of the homes, as long as the cost is not exorbitant. 950 So.2d at 79 (*citing Roman Catholic Archdiocese of New Orleans v. Louisiana Gas Service Co.*, 618 So.2d 874, 879-880 (La. 1993).

**C.   Mental Anguish Damages**

Louisiana law allows a plaintiff to recover for mental anguish suffered as a result of damage to property, but only in limited circumstances: (1) when property is damaged by an intentional or illegal act; (2) when property is damaged by acts for which the tortfeasor will be strictly or absolutely liable; (3) when property is damaged by acts constituting a continuing nuisance; or (4) when property is damaged when the owner is either present or nearby and suffered a psychic trauma as a direct result. *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 764 F.2d 1084, 1087 (5th Cir. 1985) (*citing Meshell v. Ins. Co. of N. Am.*, 416 So. 2d 1383, 1387 (La. App. 3 Cir. 7/2/82); *see also Holzenthal v. Sewerage & Water Bd. of New Orleans*, 950 So.2d 55, 79 (La. App. 4 Cir. 1/10/07). "The mental anguish must be a real mental injury. The usual worry over the consequences of property damage (where a plaintiff suffers no direct mental injury from the negligent act)

9

will not justify an award for mental anguish damages." *Id.* (internal quotes omitted). Finally, a "strong showing of causation is required." *Id*. at 1087-88.

The Fifth Circuit commented that "due to the highly subjective nature of mental anguish claims and their susceptibility to fabrication or exaggeration, our courts developed these criteria to limit recovery to cases where both the mental injury and the causal relation to the property damage are clearly established." *Id*. at 1088. The court further noted "that the cases in which recovery was denied on the ground that plaintiff was not physically present when the property damage occurred emphasized that absent the circumstance of his presence, the plaintiff could not show that the anguish he suffered was directly caused by the accident." *Id*.

Plaintiffs rely primarily on *Holzenthal v. Sewerage & Water Bd. of New Orleans* to support the proposition that intentional act in the first circumstance describes the intent of the action rather than an intent to inflict harm. *Holzenthal* involved damage suffered to the plaintiffs' homes due to construction work on an underground drainage canal in the median of Napoleon Ave. in New Orleans. Construction began in May 2000 and continued into the summer of 2001. The *Holzenthal* court, however, did not discuss defendant's intent but simply found that the first three circumstances had been met - intentional or illegal act, acts for which the tortfeasor will be strictly or absolutely liable, and acts constituting a continuing nuisance. The court's analysis

focused on the fact that the plaintiffs were elderly and "felt helpless as they endured months of watching their homes sustain increasing damage." *Holzenthal*, 950 So.2d at 79-80.

Defendants argue that any harm was due to an unintentional error and assert that an act is intentional if "a reasonable person must have perceived that his actions were certain to cause injurious consequences." This standard of intent, however, is presented in *Faust v. Greater Lakeside Corp.*, 797 So.2d 748 (La. Ap. 4 Cir. 9/12/01), for the purpose of vicarious liability. The definition of intent stated earlier in the case in the context of an intentional tort is "that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct or (2) knows that the result is substantially certain to allow from his conduct, whatever his desire may be as to that result." *Id*. at 752.

The cases cited by the parties do not examine intent in the context of mental anguish damages. To the extent intent was determined in *Holzenthal*, it can be inferred that the intent was to complete the construction work rather than to create a nuisance for the homeowners. However, one could also infer from *Holzenthal* that the intent was also to create a nuisance because a reasonable person would know such harm would result from over a year of construction. At any rate, "the determination of what a party intended in acting under given circumstances depends upon a weighing of all the facts and circumstances surrounding the

11

action." Such determinations are "based on subjective facts" and are "rarely appropriate for summary judgment."  Indeed, the majority of the cases cited on mental anguish and intent involved review after trial.  Plaintiffs have presented evidence of having suffered some degree of mental anguish, including sleep deprivation, at the loss of this home that has been in their family for years.[1]  Defendants at least intended to demolish the property and did so.  Any further legal guidance on determining intent in the context of mental anguish damages is appropriately addressed in a jury charge rather than summary judgment.

Accordingly,

**IT IS ORDERED** that Defendants' Motions for Partial Summary Judgment are **DENIED.**

New Orleans, Louisiana, this 20th day of May, 2009.

UNITED STATES DISTRICT JUDGE

---

[1] *In re Air Crash* offers some guidance on causation.  In that case the Fifth Circuit determined that a husband who voluntarily watched the demolition of his house, which was covered by jet fuel after a plane crashed in his neighborhood and subsequently declared uninhabitable, was not entitled to mental anguish damages because of the demolition. The court concluded that evidence was needed to show what part of the plaintiff's disorder was attributed to the destruction of the plaintiff's house and what part was attributed to fear for his family, who was at home during the crash and whose whereabouts were not immediately known to plaintiff upon learning of the plane crash.  764 F.2d at 1089.  Plaintiffs do not appear to have competing mental anguish causation issues such as those presented in *Air Crash*.