UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JASON BANKS, SR. AND                                CIVIL ACTION
LISA BANKS

VERSUS                                              NO. 08-1091

CITY OF NEW ORLEANS, ET AL                          SECTION B(3)


ORDER AND REASONS

Before the Court is Defendant United States of America's Motion for Summary Judgment[1] (Rec. Doc. 58). The motion is opposed. (Rec. Doc. 69). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part.** The motion is **GRANTED** with respect to Plaintiffs' Constitutional due-process and takings claims against Defendant United States and **DENIED** in all other respects.

*BACKGROUND*

In the aftermath of Hurricane Katrina, the New Orleans City Council passed Amendment 22499 to the City Code (Division 4 of Article IV of Chapter 26, Section 264) to provide emergency condemnation and demolition of buildings deemed to pose a threat to public health, safety, and welfare. The ordinance was passed under

---

[1] Defendant's supporting memorandum states that the motion is a Motion to Dismiss or alternatively a Motion for Summary Judgment. (Rec. Doc. 58-4).

1

the authority of La. Rev. Stat. § 33: 4752, which provides in pertinent part:

> A. (1) Both the city of New Orleans and the city of Shreveport may adopt ordinances, rules, and regulations in order to condemn and cause to be demolished, removed, or both, any building or other structure, situated within their respective municipal boundaries, which, by reason of its nature or condition, endangers the public welfare or safety.
>
> (2) Both the city of New Orleans and the city of Shreveport may, by ordinance, provide a method of demolishing, removing, or both, buildings or structures and maintaining property in a sanitary condition subsequent to demolition, including grass cutting, weed abatement, and trash and garbage removal, at the expense of the property owner.
>
> (3) Such ordinances shall include provisions for notification of the owner and an opportunity to be heard.

Under the authorization of the Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5121, *et seq*, the Federal Emergency Management Agency ("FEMA") executed an agreement with the State of Louisiana to provide assistance, including debris removal, after Hurricane Katrina.[2] FEMA then entered a mission-assignment tasking memorandum with the Army Corps ("Corps") to provide the requested services, including debris clearance and removal. The Corps, in turn, contracted with private entities for debris removal under 42 U.S.C. § 5150(a)(1).

Plaintiffs owned property located at 2311 Tricou Street in New

---

[2] Plaintiff brings its claims against the United States under the Federal Tort Claims Act, and although Defendant mentions the Stafford Act, it does not argue immunity under it. (See Rec. Docs. 23, 58-4).

Orleans, Louisiana. As a result of Hurricane Katrina, a home ("floater home") from a neighboring lot floated or was blown into a wood frame garage on Plaintiffs' home. Plaintiffs assert that the floater home collapsed the garage but did not damage their single story brick home. While in the process of cleaning and gutting their home, Plaintiffs signed up for a debris removal program sponsored by the City of New Orleans ("the City"). Inspections conducted by the City indicated that Plaintiffs' home sustained no major damage. The City contracted with Irving Trucking to remove the floater home and garage; this work was completed in March 2007.

In June and July 2007 letters stating that the property located at 2311 Tricou St. had been condemned and would be demolished after thirty (30) working days of the date of each letter were mailed to Plaintiff Mr. Banks at 2311 Tricou St. Defendants assert that notice was also posted in the Times Picayune and on the City's website. Plaintiffs' home was demolished on or around July 30, 2007 by ECC Operating Services, Inc. ("ECC"), who was contracted for the task by the Corps. Plaintiffs assert that such demolition was wrongful and was done without their knowledge or approval. Plaintiffs filed administrative claims with the Army Corps in October 2007 and filed suit in state court in January 2008 against EEC and the City of New Orleans for wrongful demolition of their property. Defendants removed the suit to federal court on February 21, 2008. The Corps failed to process and/or evaluate

Plaintiffs' administrative claims within six months after filing; subsequently, Plaintiffs filed their First Supplemental and Amended Complaint adding Defendant United States of America in July 2008. Defendant United States has filed this Motion for Summary Judgment asserting immunity from liability under Louisiana law.

Defendant asserts that it and its employees were acting as representatives of state and local government in the demolition activities and are therefore entitled to immunity under the Louisiana Homeland Security and Emergency Assistance and Disaster Act (LHSEADA) and under Louisiana law governing removal of structures. Defendant also argues that Plaintiffs have asserted Constitutional due-process and takings claims which are not justiciable under the Federal Tort Claims Act ("FTCA").

Plaintiffs assert that the Corps was working in the capacity of a contractor rather than as a representative of the City. Plaintiffs further argue that Defendant United States is not immune because it did not follow the "procedural safeguards and substantive restraints" that Plaintiffs assert the City Ordinance requires for any person or entity "claiming immunity from suit for acts committed in the course of demolishing a home under the authority of the Ordinance." (Rec. Doc. 69 at 10). In particular Plaintiffs assert that no notice was posted on the home in accordance with § 26-264 of the City Ordinance and that the home was demolished prior to the thirty working days indicated in the second notice letter. Plaintiffs also argue that the Louisiana

statutes referencing emergency demolition, particularly La. Rev. Stat. § 29:735(A)(1) of the LHSEADA, apply to actions taken in close temporal relation to the disaster, such as trees cleared from roadways weeks after Katrina as opposed to houses demolished years after the hurricane, and are therefore inapplicable in the present case. Plaintiffs do not dispute the case law holding that the United States is not liable under the FTCA for constitutional torts and "do not intend to pursue any expropriation-type claims against the United States." *Id*. at 21. Plaintiffs assert, however, that they have also asserted claims against Defendant United States for wrongful demolition and negligence, which Plaintiffs assert are cognizable under the FTCA.

## *DISCUSSION*

**A.  Legal Standard**

Although Defendant's motion is titled a Motion for Summary Judgment, Defendant's supporting memorandum states that the motion is a Motion to Dismiss or alternatively a Motion for Summary Judgment and cites law for both. Accordingly the Court recognizes that Defendant moves to dismiss Plaintiffs' suit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1). This claim of a lack of subject matter jurisdiction is essentially a challenge to the existence of a cause of action on the part of the Plaintiffs. "In circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the exercise of a federal cause of action, the proper course of action for the

district court...is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004)(*quoting Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). In the present case, both Plaintiffs and Defendant have submitted exhibits outside the pleadings. Thus, the Court will treat Defendant's Motion as a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary

judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Immunity**

The United States is liable only to the extent it waives sovereign immunity. *Owen v. United States*, 935 F.2d 734, 736 (5th Cir. 1991). Under the Federal Tort Claims Act ("FTCA"), suits against the United States are authorized "for injury or loss of property . . . caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. *Johnson v. Sawyer*, 4 F.3d 369 (5th Cir. 1993) ("To recover under the FTCA, [plaintiff] must have been able to succeed against the [federal] government in a *state* law tort cause of action." (emphasis in original)). The FTCA also provides that the United States will be liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. When considering the federal government's consent to be sued under a state's liability scheme, the "relevant question [is] whether the federal defendants [are] in 'like circumstances'" as the private individuals subject to the state statute. *Owen*, 935 F.2d at 737.

It is a well-settled general principle that the tort liability of the United States is, in actions under the Federal Tort Claims

Act, governed by the law of the state where the tortious conduct took place. *See e.g., Artez v. United States*, 604 F.2d 417, 429 (5th Cir. 1979). The United States asks this Court to apply the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721, et seq., ("LHSEADA") which provides immunity for the state and its political subdivisions and other agencies, as well as the agents' employees and representatives while engaged in any emergency preparedness activities, except in the case of willful misconduct. Specifically, La. R.S. 29:735, entitled "Immunity of Personnel," provides:

> A.(1) Neither the state nor any political subdivision thereof, nor other agencies, nor except in the case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

The Louisiana statute, unlike other states' statutes aimed at providing immunity for disaster emergency relief efforts, does not explicitly extend immunity to the federal government or its employees. *See Robin v. United States*, No. 04-2230, 2006 WL 2038169, *2 (E.D.La. July 17, 2006). In fact, the Louisiana statute "limits immunity to the state, its political subdivisions or other agencies, and representatives or employees that did not engage in willful misconduct, and fails to include a federal government employee or agency in any way." *See id.* (citing La.

8

R.S. 29:735). In *Robin v. United States*, this Court found that "the Louisiana legislature would have specifically included the federal government or its agents if it intended to provide blanket immunity to the United States, its agencies, or its agents." *Id*. at *3.

*Robin* involved a suit against a United States Wildlife and Fisheries agent who struck a pedestrian while the agent was conducting search and rescue operations following landfall of tropical storm Isadore. The Court examined whether the defendant was acting as a "representative" "of a State agency 'engaged in any emergency preparedness activities, while complying with or attempting to comply with this Chapter.'" *Id*. (quoting La. Rev. Stat. § 29:735). The Court in *Robin* also recognized that the LHSEADA does not explicitly preclude federal agencies from immunity and referenced the purposes of the LHSEADA. The Court found the *Robin* defendant to be a representative because he was working at the behest of a state agency and was "acting pursuant to the Governor's declaration of a state of emergency pursuant to La. R.S. 29:723."

Defendant argues that it is immune under the LHSEADA and asserts that it was acting as a representative of the City and that home demolition is an emergency preparedness activity. Plaintiffs argue that Defendant was a contractor according to the terminology used in the City's Plan for Demolition and Removal and further argue that the Corps' assignment from FEMA tasking the Corps with

9

debris clearance indicates a completion date of March 3, 2006. Plaintiffs also argue that the immunity provision of LHSEADA was not intended to grant immunity for tortious actions committed over eighteen months after the emergency event.

Material issues of fact remain regarding whether the Corps was acting as a contractor or a representative. *Robin* and *Martin v. United States*, No. 07-663, (M.D.La. Sept. 24, 2008), appear to be the only cases cited by the parties specifically on the issue of the term "representative" in LHSEADA. In *Robin* the Court found that the plaintiff did not contest that the defendant was working at the behest of a state agency. In *Martin*, the court found that an agency relationship existed between the state and the defendant, an Illinois National Guard employee, because the state representative (Louisiana Adjutant General) "had expansive operational control ... over the Illinois National Guard during Hurricane Katrina Recovery" and had provided the employee with the mission he was carrying out at the time of the accident. *Martin*, at 3.

In both *Robin* and *Martin*, the state agency appeared to have a direct relationship with the "representative," providing assignments and exercising operational control. In the present case, unlike in *Robin*, Plaintiffs contest whether the Corps was a representative of the City and its authorization to demolish Plaintiffs' home. Though it appears that specific demolition orders often came from the City, these orders filtered through

10

FEMA, who tasked the Corps with debris removal work. Additionally, it appears the Corps did not simply receive a demolition assignment and hire contractors but also engaged in activities that helped determine which properties would be demolished. With respect to Plaintiffs' property at issue, the parties present contradictory evidence regarding those persons inspecting the property. Defendant alleges that City officials and FEMA conducted inspections while Plaintiffs assert that persons working for the Corps inspected the property. (Rec. Doc. 69-2 at 2, and Rec. Doc. 58-3 at 2,¶ 6 in each). Questions of fact also remain regarding the Corps' authorization to conduct the work.[3]

Additionally, Plaintiffs' temporal arguments regarding emergency preparedness activities afforded immunity has merit, especially in light of the purpose of the LHSEADA and the difference between home demolition and mere debris removal. As recognized by the Fifth Circuit in *Banks v. Parish of Jefferson*, 990 So.2d 26, 32 (5th Cir. 2008), "[E]mergency preparedness immunity pursuant to La. Rev. Stat. § 29:735 has never been granted to activities performed outside of a declared state of emergency." Additionally, the majority of cases reviewing the LHSEADA involve torts occurring relatively close to the time of the emergency event, and at least one court has denied immunity on the grounds

---

[3]In addition, Plaintiffs allege misconduct on the part of the Corps and reference altered reports and specifically allege that a report describing the damaged floater house was later changed to indicate the address of Plaintiffs' brick home. (Rec. Doc. 69-2 at 2, ¶ 6).

that the state of emergency had expired six days prior to the accident. *Clement v. Reeves*, 975 So.2d 170 (La. App. 3 Cir. 2008). *See also In Re Canal Breaches*, 2008 WL 4691623, *8 (E.D.La. 2008)(distinguishing immunity from liability for actions during Katrina and finding that liability for negligent actions not "contemporaneous with the hurricane, and . . . not [done] directly in preparation for a hurricane" were not barred from suit). In *Banks*, the Fifth Circuit agreed with Judge Duval's ruling in *Armstead v. Nagin*, 2006 WL 3861769 (E.D.La. 12/2906), that a "tangential inference that acts or omissions . . . performed at times remote from Hurricane Katrina" do not necessarily "come under the ambit of the emergency preparedness immunity statute." *Banks*, 990 So.2d at 33. The *Banks* court found it unnecessary, when evaluating the case before it, to determine whether the LHSEADA "is limited to activities which occur during the declared state of emergency," but did find "emergency preparedness immunity applies only when the activities complained of are taken to address a discreet or specific condition or event." *Id*. at 34.

Though the City Ordinance pertains to the specific event of homes damaged by Katrina, the Court finds a distinction between mere debris removal and demolition. Defendant often references its authority regarding debris removal rather than demolition, and the FEMA assignment letter it presents speaks only of debris removal.[4]

---

[4] The Corps was tasked by FEMA to "coordinate and execute all necessary actions associated with debris clearance, removal, and disposal site management from public property in affected areas necessary to eliminate or

12

The two are not analogous. The parties did not cite and the Court's research did not reveal cases involving demolition under the LHSEADA. However, the case involving debris removal involved removal of limbs blocking a city street after a hurricane. *Castille v. Lafayette City-Parish Consolidated Government*, 896 So.2d 1261, 1263 (La. App. 3 Cir. 3/2/05). When considering the LHSEADA purpose to ensure adequate state preparations "to deal with emergencies or disasters, and in order to detect, prevent, prepare for, investigate, respond to, or recover from these events, and generally to <u>preserve the</u> lives and <u>property of the people of the state of Louisiana</u>" in conjunction with the almost two year span[5] between Hurricane Katrina and the demolition of Plaintiffs' home, the Court finds Plaintiffs' policy arguments convincing and reasons that blanket unconditional immunity for such demolition does not fall within the scope of emergency preparedness activities for which immunity is provided under the statute. La. Rev. Stat. § 29:722 (emphasis added). The City's choice to demolish Plaintiffs' home pursuant to City of New Orleans ordinance, Division 4 of

---

lessen immediate threats to public health and safety, as directed by FEMA. In some instances, there may be similar requirements for debris clearance and removal from specified private property necessary to eliminate or lessen immediate threats to public health and safety." (MFR for Verbal Tasking, Rec. Doc. 58-7 at 4).

[5] Note that Governor Blanco extended the State of Emergency Proclamation several times. The last such extension by Governor Blanco revealed by the Court's research was signed on January 16, 2007 and extended the state of emergency through Saturday, February 17, 2007. Proclamation No. 7 KBB 2007. Governor Jindal renewed a limited extension in February 2008 which specifically referenced remediation through demolition. However, the Court did not find any state of emergency extensions, limited or otherwise, that were in effect at the time Plaintiffs' home was demolished.

Article IV of Chapter 26 Section 264 ("the Ordinance"), which was enacted under the authority of La. Rev. Stat. § 33:4752, rather than the LHSEADA, appears to convey the same sentiment.[6]

The Ordinance provides:

> (A)Any building or other structure "damaged by Hurricanes Katrina and/or Rita or rendered uninhabitable by any Act of God which, upon inspection by the Director of Code Enforcement, or his duly appointed representative, is deemed by him to pose a serious, imminent and continuing threat to the public health, safety and welfare by reason of being unremediated, ungutted, open to the public, unsafe, unsanitary or conducive to ill health, shall have the authority to cause the demolition or remediation of such buildings or other structures by municipal department or private company. Following inspection of the structure during which a determination of a serious and imminent threat to the public health, safety and welfare is made, a notice will be provided to the registered owner of the property advising that the structure may be demolished or remediated by the City of New Orleans after thirty (30) business days from the date of this notice. Notice will be provided by the following means:

---

[6] An inter-office memo serving "as an official condemnation" of the property states:

> In accordance with the City of New Orleans ordinance, Division 4 of Article IV of Chapter 26 Section 264, it has been determined that the referenced structure constitutes an immediate threat to public health, safety and welfare; by reasons of being unremediated, ungutted, open to the public, unsafe, unsanitary or conducive to ill health of the community.
>
> This determination is based on an inspection of the site verifying that the existing unsafe conditions were the result of Hurricane Katrina, and if left unabated will continue to pose a greater danger to the health and safety of the community.
>
> Therefore, according to Section 26-264 of the code, as an executive officer of the Office of Planning and Development, I am authorizing the demolition of the referenced property.

(Rec. Doc. 58-6 at 6). Similar language is present in a letter dated June 11, 2007, notifying the owner of the condemnation and proposed demolition. *Id*. at 7.

> a. Regular mail to the last known address of the registered owner of the property as reflected in the Office of the Registrar of Conveyances for the Parish of Orleans and the in tax rolls of the City of New Orleans.
> b. Posting a notice on the property advising that the property has been found to be in violation of this section of the City Code;
> c. Posting of the finding on the City's web site; and
> d. Posting in the Times Picayune for three (3) consecutive days.
>
> (B) The method and means of demolition, removal, remediation, or any combination thereof, of buildings or structures so condemned shall be in accordance with other applicable ordinances.

La. Rev. Stat. § 33:4752 governs the exercise of police power regarding the removal of dangerous structures and assistance of the National Guard. Section 33:4752 allows the city of New Orleans to adopt ordinances in order to condemn and cause to be demolished buildings which endanger the public welfare and requires that "such ordinances shall include provisions for notification of the owner and an opportunity to be heard." In contrast to LHSEADA's rather broad immunity provision, Section 33:4752(E)(1) allows for the assistance of the National Guard and (E)(2) protects the municipality, the National Guard, and their personnel from liability for damages sustained as a result of the demolition "<u>in the event all procedural protections and substantive restraints have been adhered to</u> by the governing authority."[7] (emphasis

---

[7] La. Rev. Stat. §33:4752(E) states:

E. (1) The governing authority may request and the adjutant general may assign, subject to the approval of the governor,

15

added).

Section 33:4752(A)(3) also requires that ordinances promulgated under the statute include "provisions for notification of the owner and an opportunity to be heard." The City Ordinance complies with § 33:4752(A)(3) by providing four procedural notice protection provisions, notice by mail, posting on property, and posting on website and in the Times Picayune. The Ordinance linked its notice provisions with the inclusive "and"; hence the Ordinance requires that notice be provided in all four manners. Failure to provide notice in all four manners constitutes noncompliance with the terms of the Ordinance and therefore failure to adhere to "all procedural protections." § 33:4752(A)(3).

Defendant argues that it is eligible for immunity under § 33:4752(E) because it was acting in a position equivalent to personnel of the City. Defendant also asserts that all procedural protections were complied with in accordance with § 33:4752(E)

---

national guard personnel and equipment to assist in the removal and demolition of condemned buildings, structures, or public nuisances. The provisions of this Subsection shall be applicable when the budget for the demolition and removal of condemned structures has been expended by the governing authority of a municipality. However, the request must be accompanied by documentation that all procedural protections and substantive restraints have been adhered to by the governing authority.

(2) In the event all procedural protections and substantive restraints have been adhered to by the governing authority, the municipality and their personnel and the national guard and their personnel shall not be liable to the owner of the building, structure, or public nuisance for any damages sustained resulting from the demolition of the building, structure, or public nuisance.

because the City sent written notice to Plaintiffs, posted a notification on its website, and published a notification in the Times Picayune. Even if the Court accepts Defendant's argument that the Corps was acting as personnel of the City, the Court finds that material issues of fact remain as to whether all procedural protections were adhered to. Plaintiffs assert and present evidence that no notice was posted on the property. If no notice was posted, then the City did not comply with the terms of its Ordinance, and immunity under § 33:4752(E)(2) does not apply.[8] Hence genuine issues of material fact exist regarding immunity under Louisiana law and summary judgment is inappropriate.

Regarding Constitutional due process and takings claims asserted against Defendant in Plaintiffs' Complaint, Plaintiffs have stated that they do not dispute the case law holding that the United States is not liable under the FTCA for Constitutional torts and "do not intend to pursue any expropriation-type claims against the United States." (Rec. Doc. 69 at 21).

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part.** The motion is **GRANTED** with respect to Plaintiff's Constitutional due-process and takings

---

[8]Plaintiffs also assert that there was no inspection determining that their home was a serious and imminent threat because the inspection reports pertained to the garage and floater home, not the structure of their one story brick home which was gutted. (See Rec. Doc. 69 at 14).

claims against Defendant United States and **DENIED** in all other respects.

New Orleans, Louisiana, this 20th day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE